UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CARL LEE LEDFORD,<br><br>Plaintiff,<br><br>v.<br><br>KATRIKA WILLIAMS, Community Manager Property Manager/Agent for Owner, in her individual and official capacity, et al.,<br><br>Defendants. | CAUSE NO.: 1:18-CV-337-HAB |

**OPINION AND ORDER**

The operative "pleading" in this case, brought by pro se Plaintiff Carl Lee Ledford, is located at docket entry 44. The named Defendants are Katrika Williams, Amy Gepfert, and Elisa Cupp, all of whom are employees of another named Defendant, Monroe Group, Ltd. (Monroe Group). Monroe Group is the property manager for East Central Towers, an apartment complex located in Fort Wayne, Indiana. Plaintiff was a tenant of the East Central Towers. Another named Defendant, Community Housing Concepts East Central, LLC (Community Housing), owns East Central Towers. Finally, Plaintiff has sued the Indiana Housing and [Community] Development Authority (IHCDA). His lawsuit centers around the termination of his lease and the assessment of late fees and rent.

Plaintiff was previously granted leave to proceed in forma pauperis on grounds that he was unable to pay the filing fee [ECF No. 3]. Pending before the Court is Defendants' Motion for Summary Judgment [ECF No. 52], filed by Williams, Gepfert,

Cupp, Community Housing, and Monroe Group. Plaintiff has filed a Memorandum in Response [ECF No. 55], and Defendants filed a Reply [ECF No. 56]. For the reasons set forth in this Opinion and Order, the Court finds that Defendants are entitled to judgment as a matter of law on the federal claims, and that Plaintiff cannot proceed on any claims against IHDCA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the

2

nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Plaintiff has responded to Defendants' Motion, but has also invoked Rule 54(d), arguing that the motion is premature because the parties have not engaged in discovery. Rule 54(d) permits a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The court may defer considering the motion, allow time to obtain affidavits or declarations or to take discovery, or issue any other appropriate order. *Id.*

"Rule 56 does not require that discovery take place in all cases before summary judgment can be granted. In fact, the Seventh Circuit has noted that 'the fact that discovery is not complete—indeed has not begun—need not defeat a motion for summary judgment.'" *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006) (quoting *Am. Nurses' Ass'n. v. Ill.*, 783 F.2d 716, 729 (7th Cir. 1986)) (internal citations and brackets omitted). A party seeking Rule 56(d)'s protection must make a good faith showing that it cannot respond to the movant's affidavit. *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). This requires an affidavit from the non-movant specifically identifying the material facts that it anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance). Rule 56(d) "requires a party opposing summary judgment to do more

3

than request a 'fishing expedition' in the hope of finding evidence sufficient to establish the existence of a genuine issue of material fact." *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 905 (S.D. Ill. 2008) (citing *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005)).

This litigation has been ongoing for over a year. Although Plaintiff claims the motion for summary judgment is premature, he has not identified any material fact that would be discoverable. Rather, Plaintiff states that discovery is necessary to "properly address issues of additional supporting evidence of foul conduct." (Pl.'s Resp. 7, ECF No. 55.) This vague response does not provide any grounds to defer considering Defendants' Motion for Summary Judgment, allow time to obtain affidavits or declarations, or to take discovery. Accordingly, the Court will rule on the Motion for Summary Judgment.

## BACKGROUND

Around August 2012, Plaintiff was approved for residency in an apartment at East Central Towers. Community Housing owns East Central Towers, which is managed by Monroe Group. East Central Towers is a Section 8 recipient through the IHCDA. Because Plaintiff was indigent, his initial rent was appropriated at $0.00.

Beginning in 2013, Plaintiff's annual recertification for reduced rental eligibility was conducted every August. In June 2016, Plaintiff began receiving monthly disability payments of $735.00. A Lease Amendment dated June 9, 2017, advised Plaintiff that his payment would be $25.00 beginning in August 2017. However, he was also scheduled for recertification on August 1, 2018.

Upon recertification, and due to his receipt of disability income, Williams and Gepfert appropriated Plaintiff's rent at $187.00, beginning on November 1, 2017. His utility allowance remained at $34.00. Plaintiff's Residence Ledger reveals these changes, and shows Plaintiff's payment of the amounts due around the 5th of each month.

On March 1, 2018, Plaintiff received a Notice of Utility Allowance and Rent Change. Williams, in her Affidavit, states that the Notice advised Plaintiff that his utility bill was to be decreased by $1.00, and his rent would increase by the same amount, $1.00. While those were the actual changes, the Notice contains a discrepancy at the beginning of paragraph three when it references an *increase* in the utility allowance and corresponding *decrease* in rent. The Notice provided:

> Attention All Household Members:
>
> This is to notify you that Indiana Quadel and HUD have reviewed and approved the owner's required annual analysis of the utility allowance for your Section 8 Unit at <u>East Central Towers</u>. During this process, both parties considered all information provided by project management as well as any comments provided by tenants during the 30-day comment period.
>
> Pursuant to this assessment, HUD has approved a change in your utility allowance from <u>$34.00</u> to <u>$33.00</u> effective 04/01/2018.
>
> This letter shall also serve as your 30-day notification that your monthly rent will <u>Decrease</u> by the same amount that your utility allowance *increased*. **Effective 04/01/2018, your new monthly rent will be <u>$188.00</u>**. This notice amends Paragraph <u>3</u> of your lease agreement, which sets forth the amount of rent you pay each month.
>
> You have the right to meet with management to discuss this rent change. Please contact the office if you would like to do so.

(ECF No. 53-1 at 24.) The same amounts referenced in the Notice, $33 for utilities and $188 for rent, were included in an "Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures," with an effective date of April 1, 2018. (ECF No. 53-1 at 26.) Plaintiff signed the Certificate on March 13, 2018.

Plaintiff's Resident Ledger shows that he made the $188.00 rent payments in April and May. In June, he was assessed a $14.00 late fee before making payment on the 15th. He did not make any payments in July or August.

On May 1, 2018, Williams sent Plaintiff a letter informing him that his application would not be approved due to unsatisfactory criminal and other public records. (ECF No. 53-1 at 27.) Plaintiff was advised of his right to dispute the matter with respect to the consumer reporting agency that provided the information. The May 1 letter began the process of non-renewal of Plaintiff's lease. On May 24, 2018, Williams sent Plaintiff a Notice of Non-Renewal of Lease for his lease ending on July 31, 2018. The reason cited was "criminal history," which was identified as a violation of his lease and of Indiana House Rules. (ECF No. 53-1 at 28.) The Notice advised Plaintiff that he was expected to vacate the premises in thirty days, on or before June 24, 2018.

On June 28, 2018, Plaintiff received a Notice of Pending Eviction because he had not vacated the premises by June 24. The Notice warned that if Plaintiff did not vacate the premises, the Monroe Group and East Central Towers could terminate his tenancy and seek enforcement in court. Because an eviction would appear on Plaintiff's record and could impact his ability to rent affordable housing, the Notice implored that Plaintiff instead leave voluntarily by July 1, 2018.

Another notice of proposed eviction was sent to Plaintiff on July 6, 2018, in connection with his nonpayment of rent. Plaintiff was advised that if he failed or neglected to cure the breach, he was required to vacate his unit no later than July 16, 2018.

On July 20, 2018, Williams sent Plaintiff another Notice of Non-Renewal of Lease advising that his lease would not be renewed due to his criminal record. The Notice advised that he was expected to vacate the premises in ten days, by August 1, 2018. Plaintiff was again advised that failure to leave could result in court proceedings for an eviction.

It appears that Plaintiff had, in fact, moved his belongings from the apartment by the end of June and was no longer living there by July 2018. Despite this, Community Housing, through Williams, Gepfert, and Cupp, sued Plaintiff in small claims court for possession and back rent/damages. However, it was determined that eviction was not necessary, as Community Housing was in possession of the property. It also appears that the small claims matter was dismissed.

**ANALYSIS**

Plaintiff attempts to assert a myriad of legal causes of action in his Amended Complaint. In his words, Defendants are liable to him for breach of contract, discrimination based on race, intimidation under Indiana Code § 35-45-2-1, harassment in violation of 42 U.S.C. § 1983 and Indiana Code § 35-45-2-2, intentionally inflicted displacement, denial of reasonable accommodation, intentional disparate treatment, disparate impact, conspiracy under 42 U.S.C. § 1985, extortion under state law, fraud, abuse of process, malicious prosecution in violation of the Fifth, Sixth, and Fourteenth Amendments, and intentional infliction of emotion distress in violation of 42 U.S.C. § 1983.

Defendants have moved for summary judgment on all claims. Plaintiff has responded. His first argument in response is that counsel for Defendants should not be permitted to represent multiple clients because it creates a conflict of interest. Therefore, he asserts, defense counsel should withdraw, the Motion for Summary Judgment should be considered "moot," "barred" and "denied as a merit of law." (Pl.'s Resp. 4.) This inappropriately-placed argument is a nonstarter and deserving of no further discussion.

Next, Plaintiff recites a good portion of the facts from Defendants' submission, indicating that he "agrees." (*Id.* at 5.) In his additional presentation of the facts, Plaintiff characterizes his relationship with Williams and describes some of their interactions. Plaintiff also points out the discrepancy contained in the Notice of Utility Allowance and Rent Change. Namely, that it states his monthly rent will decrease by the same amount that his utility allowance increased. He asserts that this means his rent should have been reduced from $187.00 to $186.00, and that his utility allowance should have been increased by one dollar.

According to Plaintiff, he moved out of the apartment at the end of June and he owes no fines or late fees.

**A.     Race Discrimination Claim**

Plaintiff asserts that he is a member of a protected class and he has made several references in his Amended Complaint to federal statutes that prohibit discrimination based on an individual's race. However, Plaintiff has not cited to a single fact that would permit a reasonably factfinder to conclude that his membership in a protected class played any part in the Defendants' decisions regarding his lease. No evidence of

8

discriminatory intent by any of the Defendants has been designated in the record. The undisputed facts are that the results of a background check, which revealed that Plaintiff had a criminal record, was the reason for the decision not to renew his lease.

It appears Plaintiff has also intended to assert a claim based on the disparate impact of the Defendants' practice pertaining to background checks. However, he has not attempted to show the disproportionate effect on minorities or establish that there is not an otherwise legitimate rationale for the practice. *See Ricci v. DeStefano*, 557 U.S. 557 (2009). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection" between a policy and a disparity "cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2523 (2015).

Further, Plaintiff cannot pursue a claim under Title VII because none of the Defendants employed him. *See Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015); 42 U.S.C. § 2000e-2 (referencing unlawful employment practices).

Accordingly, there is no material dispute of fact that requires a trial to determine if Plaintiff was the subject of race discrimination, and Defendants are entitled to judgment as a matter of law.

**B.**     **Section 1983 Claims—Denial of Constitutional Rights**

Section 1983 is not an independent source of tort liability. *Narducci v. Moore*, 572 F.3d 313, 318–19 (7th Cir. 2009). Rather, it is a means of vindicating rights, privileges or immunities that are guaranteed by either the U.S. Constitution or a federal statute. *Id.* "The purpose of § 1983 is to deter state actors, and private individuals in collaboration

with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official reached an understanding with private individuals to deprive a plaintiff of his constitutional rights; and (2) those individuals were willful participants in joint activity with the state agents. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)).

The Defendants moving for summary judgment are not government actors or state officials or entities. Therefore, unless there is evidence from which a jury could conclude that they reached an understanding with state officials to deprive Plaintiff of his constitutional rights and were willful participants in joint activity with those officials, Plaintiff's constitutional claims cannot proceed.

"The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999). There is no such evidence in this case. Nothing in the record suggest that Williams, Gepfert, Cupp, Central Housing, or Monroe Group had any understanding with a government official to deprive Plaintiff of his constitutional rights. Put differently,

Plaintiff simply has not shown "sufficient state involvement in the action in question to trigger constitutional protections." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (citing *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988)).

Nor has Plaintiff established what common, unconstitutional goal the Defendants purportedly shared with a state actor. Defendants provided Plaintiff with the requisite notices in connection with his lease terms. One of the notices contained an error that the utility allowance was increasing and the rent decreasing, but that is not evidence of the deprivation of a constitutional right. Moreover, the amounts due were clearly communicated, both in the notice and well as in a certification Plaintiff signed. Plaintiff makes no claim that he paid rents in July or August, and his ledger shows that he did not. Plaintiff submits that he had already moved out, but, again, any responsibility imposed on him to continue with payments does not implicate the Constitution, as opposed to his lease contract. With respect to the eviction notice for his criminal background, Plaintiff has not presented any evidence to show that Defendants did not have legitimate grounds to issue the notice, as he presents no evidence that he challenged the reporting agency's information as erroneous.

In any event, without evidence that Defendants were using Plaintiff's race as a basis to deny housing, *see* 42 U.S.C. § 3604, Defendants had authority to establish their own tenant selection criteria. *Talley v. Lane*, 13 F.3d 1031, 1035 (7th Cir. 1994); *see also Eidson v. Pierce*, 745 F.2d 453, 459–60 (7th Cir. 1984) (holding that applicants for housing subsidized under Section 8 of the United States Housing Act did not have a protectable

property interest). Thus, Plaintiff cannot make out a claim for denial of due process connected with his lease.

Plaintiff's claim for malicious prosecution would fare no better as a constitutional claim. "Malicious prosecution is not by itself an infringement on the constitutional right to due process under the Fourteenth Amendment." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (citing *Serino v. Hensley*, 735 F.3d at 593–95 (7th Cir. 2013)). Malicous prosecution must be based on a separate deprivation of a constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause. *Id.*, 770 F.3d at 673. Plaintiff's factual assertions do not support an additional constitutional deprivation.

In his pleading, Plaintiff refers to the assessment of late fees as extortion, describes the eviction notices as harassment, and accuses Defendants of intentionally inflicting emotional distress. These allegations provide a glimpse into Plaintiff's thoughts on the matters surrounding his lease, his landlord, and the management company, but they do not present triable issues of fact concerning whether Defendants violated his constitutional rights.

**C.    Conspiracy Under § 1985(3)**

To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy (2) a purpose of depriving a person or class of persons of equal protection of the laws (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to citizens of the United States. *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (citing

*Hernandez*, 197 F.3d at 263). "The plaintiff also must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)).

As already discussed, Plaintiff has not presented any evidence that he was denied the equal protection of the laws based on his race. Neither has he designated evidence that would point to the existence of a conspiracy. Mere allegations of a conspiracy are insufficient to withstand a motion for summary judgment. *See House v. Belford*, 956 F.2d 711, 720–21 (7th Cir. 1991).

### D. Denial of Reasonable Accommodation

One of Plaintiff's claims is that he was denied reasonable accommodations or alternatives. The Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended in 1988, prohibits—among other things—discrimination in housing based on handicap. 42 U.S.C. § 3604(f)(1). The definition of discrimination under the Act includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Plaintiff has not identified how this Act could apply to his situation. He has not even alleged what accommodation he was in need of, or for what reason.

**E.      Indiana Housing and Community Development Authority**

During a status conference conducted on September 18, 2019, the Magistrate Judge granted Plaintiff's motion to amend his complaint to add the "Indiana Housing and Development Authority" (IHCDA).[1] The IHCDA has not been served, and the Court finds that there is no basis to require service because dismissal is appropriate pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This subsection provides that a court "shall" dismiss a case if the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."

The inquiry is the same under § 1915(e)(2)(B)(ii) as it is under Federal Rule of Civil Procedure 12(b)(6). *Coleman v. Labor & Indus. Review Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). To assure that a pleading suffices to give effective notice to the opposing party, a complaint must contain facts that are sufficient, when accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings that fail to meet this standard are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a

---

[1] The full name is Indiana Housing and Community Development Authority.

claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

Plaintiff complains that IHCDA failed to properly train and supervise its employees, Williams, Gepfert, and Cupp, and is responsible for their illegal actions. Not only are Williams, Gepfert, and Cupp not employees of IHCDA, the factual allegations of Plaintiff's pleading do not set out a plausible claim for "deliberate indifference," as is required in failure to train cases. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiffs other theory of liability against IHCDA is that IHCDA policies permitted the Defendants to order that he vacate his apartment due to a criminal background check, making IHCDA liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff, however, has not identified a constitutional violation or denial of federal right implicated by IHCDA's policies. Plaintiff's pleading does not state a claim against IHDCA that is plausible on its face, and it will be dismissed.

**F.** **State Law Claims**

The Court has addressed, and disposed of, all claims for which it would have original jurisdiction under 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." The jurisdiction of the Court over Plaintiff's state-law claims is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution. This same statute provides that the district

15

court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial).

Upon consideration of judicial economy, convenience, fairness, and comity, *see Wright*, 29 F.3d at 1251, the Court does not find a basis to retain jurisdiction of the case, *see Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (identifying three situations in which jurisdiction over supplemental state claims should be retained even though the federal claims have dropped out). The Court's decision on the federal claims does not implicate the state law matters, and no other consideration of judicial economy make this Court's retention of the state claims the better choice. Accordingly, the state law claims are dismissed without prejudice. Plaintiff may pursue them in state court.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [ECF No. 52] is GRANTED with respect to the federal claims. The claim against Indiana Housing and Community Development Authority is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the state law claims are dismissed without prejudice, as the Court declines to exercise supplemental jurisdiction. No claims remain in this litigation.

SO ORDERED on November 5, 2019.

                                                *s/ Holly A. Brady*
                                                JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT